UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:17-CV-94-TBR

CHRISTOPHER FORD            PLAINTIFF

v.

CAREY BATTS, *et al*,            DEFENDANTS

## Memorandum Opinion & Order

This matter is before the Court upon a motion by Defendants, Ballard County, Carey Batts, and Bobby Hickman ("Defendants"), for summary judgment. (DN 60). Defendant Brandon Harrison is not a party to this motion. Plaintiff has filed a response and an unauthorized sur-reply. (DN 61; DN 68). Defendant has filed a reply and replied to Plaintiff's sur-reply. (DN 62; DN 71). Fully briefed, this matter is ripe for review and for the following reasons, Defendants' motion for summary judgment (DN 60) is **GRANTED.**

## BACKGROUND

In his complaint, Plaintiff states "On or in 2016, the exact time and date being unknown to the plaintiff, Special Agent Brandon Harrison . . . in conjunction with defendant . . . Batts, and Hickman seized property owned jointly by plaintiff and his friend Mel Althizer without a warrant or forfeiture notice" at his home. (DN 1). Plaintiff alleges that the search was conducted pursuant to a federal search warrant issued at the request of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATFE"). Plaintiff complains that "During the search of plaintiff's home, numerous items were taken, and destroyed" and "Family pictures, photo albums, furniture, dishes, utensils, televisions, video game consoles, computers, laptops, and even stuffed animals were all

1

destroyed." *Id.* at 10. In his deposition, however, Plaintiff clarified that the personal property consisted of "knick-knacks, stuffed animals, dishes . . . that's about it." (DN 59 at 8).

In his deposition, Plaintiff concedes that the search of his house was conducted pursuant to a search warrant. (DN 59 at 9). After the execution of the search warrant, Plaintiff was indicted for possession with the intent to distribute methamphetamine. *See United States v. Christopher Ford*, No. 5:15-CR-23-1-TBR at (DN 10). On January 10, 2017, Plaintiff entered into a voluntary plea agreement and was subsequently sentenced by this Court. *Id.* at (DN 106). When entering his guilty plea, Plaintiff indicated to the Court that he understood the plea agreement and that he was represented by counsel. (DN 59 at 30, 37). Plaintiff did not challenge the validity of the search warrant in his criminal case. (*Id.* at 30, 40). In his plea agreement, Plaintiff also agreed to waive all rights to notice of the property subject to forfeiture. (*Id.* at 30).

In response to Defendants' discovery requests, Plaintiff indicated that he was aware of the search of his property on August 27, 2015. (DN 41). And in his deposition, Plaintiff testified that Mel Althizer, Bobby Ford, and/or Amy Pary informed him of the search and seizure on August 27, 2015. (DN 59 at 12, 20, 27). Plaintiff argues that he did not witness the seizure of his vehicles and that he did not know which law enforcement agency seized his property.

Plaintiff claims that the Defendants "violated his right to be free from unreasonable seizures, when they seized his property, without a warrant, and having no forfeiture notice to do so" and that "[t]he search warrant was issued based upon false statements made in the Affidavit for search warrant." (DN 1 at 12). Upon conducting a screening of Plaintiff's *pro se* complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), this Court found that the following claims remained: (1) Plaintiff's claims against Defendant Batts, Hickman, and Harrison, in their individual capacities for violating his Fourth and Fifth

2

Amendment rights and his right to due process under 42 U.S.C. § 1983/*Bivens*; (2) Plaintiff's § 1983 claim against Ballard County for a policy of seizing private property without warrants or forfeiture notices; (3) Plaintiff's Kentucky state-law claim for intentional infliction of emotional distress; and (4) Plaintiff's state-law civil conspiracy claim.

**LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 556 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestle USA, Inc.*, 694 F. 3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251-52).

As the party moving for summary judgment, Defendants must shoulder the burden of showing the absence of a genuine dispute of material fact, as to at least one essential element of each of Plaintiff's claims. Fed. R. Civ. P. 56(c); *see Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). If Defendants satisfy their burden of production, then Plaintiff "must—by deposition, answers to interrogatories, affidavits, and

admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

## DISCUSSION

**(I)  42 U.S.C. § 1983 Claims**

Plaintiff's § 1983 claims are barred by the statute of limitations. Although a § 1983 claim is a federal claim, the statute of limitations for a § 1983 claim is governed by state law. *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 180 (6th Cir. 1990) ("Since Congress has never legislated a statute of limitations period for section 1983 actions, the courts, pursuant to the mandate of 42 U.S.C. § 1988, have had to look to analogous state statutes"). Accordingly, "Kentucky's one-year statute of limitations governs section 1983 actions." *Id.* at 183; *see also Baar v. Jefferson County Bd. of Educ.*, 311 Fed. Appx. 817, 825 (6th Cir. 2009) (unpublished) (holding a teacher's due process claims were barred by Kentucky's one-year statute of limitations).

While state law controls the length of the statute of limitations, "federal law governs the question of when that limitations period begins to run." *McCune v. Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988). "The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* Furthermore, "[t]he statute of limitations is not tolled while a plaintiff attempts to identify the correct defendants." *Dowdy v. Prison Health Servs.*, 21 Fed.Appx. 433, 435 (6th Cir. 2001) (citing *Haynes v. Locks*, 711 F.Supp. 901, 903 (E.D. Tenn. 1989)).

In this case, Plaintiff knew or had reason to know of his alleged injury on the day of the police raid—August 26, 2015. Plaintiff claims that on August 26, 2015 the police conducted an unlawful search and seizure of his personal property. (DN 1 at 12). In his deposition, Plaintiff states that he was present on August 26 when the seizure occurred and that he saw the law enforcement officials pull a trailer up to seize Plaintiff's four-wheelers. (DN 59 at 39). And although he argues that he did not see his vehicles removed from his property, Plaintiff stated in his deposition that Amy Pary, Mel Althizer, and/or Bobby Ford informed him of the seizure on August 27, 2015. (*Id.* at 12-13, 20, 27). Plaintiff waited to file his complaint with this Court until June 19, 2017. Nearly two-years passed between when Plaintiff knew or should have known of his injury and when he filed this action. Therefore, Plaintiff's § 1983 claims against Batts and Hickman for violating his Fourth and Fifth Amendment rights and his right to due process are barred by the statute of limitations. Plaintiff's § 1983 claim against Ballard County for a policy of seizing private property without warrants or forfeiture notices is also barred by the statute of limitations.

**(II)   Outrage/Intentional Infliction of Emotional Distress**

Under Kentucky law, in order to make out a case for either outrage/intentional infliction of emotional distress or negligent infliction of emotional distress, Plaintiff's emotional distress must be severe or serious. *Osborne v. Keeney,* Nos. 2010-SC-000397-DG and 2010-SC-000430-DG, 399 S.W.3d 1, 2012 Ky. LEXIS 203, 2012 WL 6634129, at \*9 (Ky. Dec. 20, 2012) (eliminating the physical impact requirement for negligent infliction of emotional distress claims, but requiring that the emotional injury must be severe or serious); *Stringer v. Wal-Mart Stores,*

5

*Inc.,* 151 S.W.3d 781, 791 (Ky. 2004) (recognizing that there is a high threshold necessary to make out a prima facie case of intentional infliction of emotional distress/outrage, *i.e.,* "that the conduct at issue must be a deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community" and that the conduct must be "extreme and outrageous") (quotations omitted). "A 'serious' or 'severe' emotional injury occurs where a reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case. Distress that does not significantly affect the plaintiffs everyday life or require significant treatment will not suffice." *Osborne v. Keeney,* 2012 Ky. LEXIS 203, 2012 WL 6634129, at *9.

Plaintiff has failed to state a prima facie case for intentional infliction of emotional distress/outrage. A prima facie case for intentional infliction of emotional distress requires that: (1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe. *Stringer*, 151 S.W.3d at 788-89 (citing *Humana of Kentucky, Inc. v. Seitz, Ky.*, 796 S.W.2d 1, 2-3 (1990)). "[I]t is the conduct of the offender rather than the subject of the conduct [that] determines whether the conduct was outrageous." *Id.* (internal quotations omitted). In considering what constitutes outrageous conduct, Kentucky courts have turned to the commentary of the Restatement (Second) of Torts § 46(1) which explains:

> *Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which

6

would entitle the plaintiff to punitive damages for another tort. *Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community*. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime, plaintiffs will necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no reason for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam . . . .

Restatement (Second) of Torts § 46(1) cmt. d (1965) (emphasis added).

Defendants did not engage in outrageous or intolerable conduct in this case. Plaintiff alleges that Defendants "seized property owned jointly by plaintiff and his friend Mel Althizer without a warrant or forfeiture notice" at his home and that, during the search, property owned by him and Althizer was seized or destroyed. (DN 1). Plaintiff claims that various vehicles were seized and that personal property was seized or destroyed. In his deposition, Plaintiff clarified that the personal property consisted of "knick-knacks, stuffed animals, dishes . . . that's about it." (DN 59 at 8). And although Plaintiff alleges in his complaint that the police did not have a warrant, he contradicts himself in his deposition and is estopped from denying the existence of the warrant due to his guilty plea in his criminal case. Plaintiff admits in his deposition that "[t]here was a warrant." (DN 59 at 9). Plaintiff did not challenge the validity of the search warrant in his criminal case. (*Id.* at 30-31, 40). And Plaintiff acknowledged in his plea agreement that his indictment sought:

> *forfeiture of any and all property* constituting, or derived from, proceeds the defendants obtained, directly or indirectly, as a result of said offenses, and any and all of the defendants' property used, or intended to be used in any manner or part,

7

> to commit or to facilitate the commission of the violations alleged in this Indictment
> . . . .

*United States v. Christopher Ford*, No. 5:15-CR-23-1-TBR, DN 106).

Plaintiff cannot argue that the search warrant was invalid because doing so would imply the invalidity of his conviction. *See Heck v. Humphrey*, 512 U.S. 477, 486-87, 129 L. Ed. 2d 383, 112 S. Ct. 2364 (1994); *Mason v. Louisville Police Dep't.*, 8 Fed. Appx. 326, 327-28 (6th Cir. 2001). Therefore, Plaintiff's intentional infliction of emotional distress claim asserts that the Defendants engaged in outrageous or intolerable conduct when they seized and destroyed his property in the course of executing a valid search warrant on his property in connection with a methamphetamine trafficking investigation. This claim is meritless. The Sixth Circuit has repeatedly held seizures of property to be lawful in comparable cases. *See e.g.*, *U.S. v. One 1984 Cadillac*, 888 F.2d. 1133 (6th Cir. 1989). And society clearly is prepared to tolerate reasonable searches conducted pursuant to warrants issued upon probable cause. *See* U.S. Const. amend. IV. The Defendants in this case conducted a reasonable search of Plaintiff's property pursuant to a warrant and seized Plaintiff's property that was connected to or derived from his drug trafficking operation. The fact that the Defendants destroyed some "knick-knacks," stuffed animals, and dishes in the process does not elevate their conduct to being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46(1) cmt. d (1965). Because Defendants' conduct was not outrageous or intolerable, Plaintiff's intentional infliction of emotional distress claim must be dismissed.

**(III)   State Law Civil Conspiracy**

Plaintiff fails to state a claim upon which relief can be granted for civil conspiracy. Civil conspiracy "is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." *See Stonestreet Farm, LLC v. Buckram Oak Holdings*, N.V., No. 2008-CA-002389-MR, 2010 Ky. App. Unpub. LEXIS 555, 2010 WL 2696278, at *13 (Ky. Ct. App. July 9, 2010) (citing *Davenport's Adm'x v. Crummies Creek Coal Co.*, 299 Ky. 79, 184 S.W.2d 887, 888 (Ky. 1945)). Civil conspiracy is defined as "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." *Peoples Bank of N. Kentucky, Inc. v. Crowe Chizek* & Co. LLC, 277 S.W.3d 255, 261 (Ky. Ct. App. 2008) (quoting *Smith v. Board of Education of Ludlow*, 264 Ky. 150, 94 S.W.2d 321, 325 (Ky. 1936)). In Kentucky, to prevail on a claim for civil conspiracy, the proponent must show an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act. *Id.* (citing *Montgomery v. Milam*, 910 S.W.2d 237, 239, 42 12 Ky. L. Summary 39 (Ky. 1995)). Kentucky courts have focused on the meaning of "concerted action." The Kentucky Court of Appeals recently explained that:

> Kentucky's highest court provided direction as to the necessary components of a conspiracy in the case of *Davenport's Adm'x v. Crummies Creek Coal Co*. [299 Ky. 79, 184 S.W.2d 887 (Ky. 1945) ] in which the decedent's personal representative sued a coal company alleging that a conspiracy was formed between the company and its employees to commit a wrongful act resulting in the death of an innocent party. The Court held that before a conspiracy can be found, a "necessary allegation is that the damage or death resulted from some overt act done pursuant to or in furtherance of the conspiracy." The Court acknowledged that there is no such thing as a civil action for conspiracy, noting that the action is for damages caused by acts committed pursuant to a formed conspiracy. In the absence of such acts done by one or more of the conspirators and resulting in damage, no civil action lies against anyone since *the gist of the civil action for conspiracy is the act or acts committed in pursuance of the conspiracy, not the actual conspiracy*.

*Kloiber v. Daniel Kloiber Dynasty Trust*, No. 2013-CA-000436-MR, 2014 Ky. App. Unpub. LEXIS 929, 2014 WL 6882265, at *6 (Ky. Ct. App. Dec. 5, 2014) (emphasis added). Kentucky's courts have looked to the Restatement (Second) of Torts, § 876 (1979) to provide clarity on the meaning of "concert of action." The Restatement provides the following explanation:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct separately considered, constitutes a breach of duty to the third person.

*Peoples Bank*, 277 S.W.3d at 261 (citing Restatement (Second) of Torts § 876). In compliance with the Restatement's definition, Kentucky's courts have held that to satisfy the "concert of action" requirement "there must be proof that the defendants acted tortiously pursuant to a common design, or that they rendered substantial assistance to others to accomplish the tortious act." *Id.* "[M]ere negligence [on the part of the defendants] is not sufficient to support a claim for civil conspiracy." *Id.*

In this case, Plaintiff simply has not identified any facts to create a genuine dispute that a unlawful/corrupt combination or agreement existed or that an unlawful act occurred. The Defendants searched Plaintiff's property pursuant to a valid search warrant issued upon probable cause. The Ballard Circuit Court entered an order declaring items subject to this suit as contraband and forfeited the items to Ballard County Sheriff's Office, pursuant to KRS 527.060. (DN 30-1). Defendants provided Plaintiff with a notice of intent to sell the property. (DN 30). The search and seizure in this case was lawful and executed pursuant to a warrant issued upon probable cause. And the forfeiture of property seized due to its connection with a drug trafficking operation is not unlawful. *One 1984 Cadillac*, 888 F.2d 1133. Furthermore, Plaintiff's claim for

civil conspiracy cannot go forward without an underlying tort. Because this Memorandum Opinion & Order dismisses Plaintiff's § 1983 and intentional infliction of emotional distress claims, Plaintiff is without a claim to apply a civil conspiracy theory to. For these reasons, Plaintiff's civil conspiracy claim must be dismissed.

## ORDER

For the foregoing reasons **IT IS HEREBY ORDERED**,

Defendants' motion for summary judgment (DN 60) is **GRANTED**. All claims against Carey Batts, Bobby Hickman, and Ballard County are **DISMISSED.** Defendants' claims against Brandon Harrison remain before the Court.

**Thomas B. Russell, Senior Judge**
**United States District Court**

August 29, 2019

CC: Counsel of Record
CC: Christopher Ford, *Pro Se*, 16217-033
    Gilmer
    Federal Correctional Institution
    Inmate Mail/Parcels
    P.O. Box 6000
    Glenville, WV 26351